Thank you, Your Honor. May it please the Court, Peter Thompson on behalf of Apache Corporation, the appellant in this matter. This is another in a long line of cases that this Court has heard that deal with claims for contractual indemnity and insurance coverage in oilfield contracts. And just briefly, Your Honor, the underlying facts are a gentleman by the name of Jake Bergeron, who was employed by Linear Controls, was being transported on an international offshore vessel to an Apache platform to do some work when the international offshore vessel strikes a hidden submerged object, comes to a screeching halt, and Mr. Bergeron gets hurt. Plaintiff Bergeron sues International Offshore, who then says, well, Apache, under our contract with you, which is a maritime contract, you have to indemnify us for claims brought either by your employees or by employees of your contractors, like Linear. And as the Court is well aware, maritime contracts have enforceable indemnity obligations as long as clearly expressed and worded. So Apache ends up ultimately settling the claim that Linear brought against it under that contract. Then under the classic knock-for-knock language that the Court is used to saying, Apache turns to Linear, with whom it had the contract. And in Apache's master service contract with Linear, Linear agreed to indemnify Apache for any and all losses, quote, caused or contributed to by the negligence, omission, strict liability, or contractual liability, or fault of any member of the company group, company group being Apache. So Linear, in its contract, agreed to defend and indemnify Apache not only for any fault or neglect it might have, but also for any contractual liability that Apache might have, which is what it arguably did have, obviously, against international offshore services. Importantly, Judge, the master service agreement goes on to require Linear to obtain insurance, naming Apache as an additional insured, and to cover any and all the contractual liabilities assumed in the contract. As the Court is aware, Louisiana has an Oilfield Anti-Indemnity Act that applies to contracts that are governed by state law. The contract with Linear, arguably, is a state law contract. It's actually called the Indemnity Act, but it's become known as the Anti-Indemnity Act, as you know. It is. It's actually the L-O-I-A, yeah, sorry, Louisiana Oilfield Indemnity Act. Thank you, Your Honor. Well, a lot of our opinions get that wrong because it mainly focuses on anti-indemnity. Right. And of course, as the Court set forth in the Marcell decision many years ago, kind of the only way to get around the act, if you will, for a company in Apache's position is to have a direct relationship with the insurance company for its contractor here, Linear being the contractor and Catlin the appellee being the insurance company. So after Marcell, Apache makes it clear in an Exhibit E to its contract that company and contractor may pay to each other's insurers the premium required by their respective insurers to extend all of their insurance policies to include coverage for companies and contractors' respective indemnities as required by this Act. So Apache was actually, their name was actually in the Catlin policy, right? Their name is in it on an endorsement. In Section 2, they're an insured, additional insured under the policy. Yes, sir. How about a named insured? Well, of course, that's Catlin's position and as the named insured definition is in the beginning, I would tend to agree except that we are a named additional insured and as I pointed out in our brief, there's also a blanket naming and waiving endorsement that is a general part of the policy. But you're an insured under Section 2 of the policy, right? Yes, sir. I think the importance from our standpoint is you have clearly the underlying contracts would cover the claim that we're in agreement by Linear to extend, to give policies or to offer to Apache policies that would cover those specific obligations. Apache relies on Linear then to go to Catlin and say we have an operator that needs coverage. Linear presumably says what's this for because they set a premium, they must have done some analysis to make that charge. They set a premium and Apache pays it and then when the claim gets brought, it's denied for various reasons but the one that we're here about today is you're not a named insured and the coverage you're seeking only applies to named insureds. Your Honor, it's our position that when Apache became insured under the policy and paid the premium, we got the full scope of the policy which includes the blanket naming and waiving provision which says as required by written contract. The Ironshore case that we cite in our brief and the Becker case that we cite in our brief are two examples where this court has said where there's an as per written contract or as required by written contract provision and you need to look at that written contract. Catlin points out that those cases dealt with restrictions of coverage which is true but Apache submits in a case like this where it's paid a premium and its contracts presumably were presented to Catlin with the understanding that they were seeking coverage for the exposures that Linear agreed to pay. Let me ask you this. I mean since Apache is actually, you know, their name is in the contract as an additional insured under Section 2, I don't really see how that omnibus insured provision is even triggered in the policy. I mean they're not, they don't have to rely on that omnibus provision to get coverage. Their name is actually, their name does an additional insure. Definitely Your Honor and I think the thing I like about the omnibus provision is the as per written contract language is. I know you'd like to fall under there but I mean how is that triggered if you don't need that section, if your name is actually in the policy as an additional insured, how is that omnibus provision even triggered? Well what I would argue Your Honor is that, but for Marcell, that omnibus provision is in that contract all the time and we should be, I'm sorry, but for the Louisiana Oil Field Act that omnibus provision would apply and we wouldn't have had to pay a premium and that led to a second endorsement being added naming us and what I'm saying. I don't see where Marcell extends your coverage. What authority do you have that Marcell does, the case does anything but just say you're not, the Oil Field Indemnity Act doesn't apply to you? I would not be arguing that Marcell in and of itself extends the coverage. I would be arguing that what Marcell does is allow the oil company to procure coverage and in this case coverage as required by the written contract. So it's the written contract that I would argue extends the coverage here because they've agreed to cover as per the written contract. Well if, but you know the Ironside and the Deepwater Horizon, there that was a provision that limited the coverage. Here I just, I don't see how anybody would think that they, any insurer would cover multiple contracts that Apache might write. I mean you know how all these service companies go out there so you might be covering 15 or 20 contracts. I just don't see how that would be within anybody's intention. And those cases do limit the coverage where the intention is clear. So how would any subcontractor, I mean these are small operators, how would an insurer take that on for all of Apache's contracts? Well I think you still have the language in the policy that it has to rise out of the business that that insurer is providing for Apache in this case. If you've got an employee on somebody else's boat or they're helping somebody else, these labor crews, you know how that is. Yeah but Your Honor, but then the claim doesn't arise out of linear and Apache's relationship and so there would clearly be no coverage if it was just an Apache claim down the road where linear folks weren't involved in the claim. Well here you just had a, your insurer just had somebody on their boat, didn't they, I mean. Yeah, which is the irony here because Apache clearly had no fault in this thing. We're an innocent bystander and yet we're obliged to pick up one party. We go about trying to get coverage from the other, the only way that's available through Marcell and we think we have the coverage, we're billed for it, and then we're told now you've got to read the name insured and then you've got to read the insured contract and then you've got to go to whether Section 2 changes it and to me it's a lot of gymnastics quite honestly, Your Honor, to say no coverage here when Apache certainly thought it was buying it. When you go through the definitions of insured contract, I mean I don't see any flaw in that analysis. Well, Your Honor, I think, I understand what the arguments being made by Catlin are in that respect but certainly over the years whether you and your means only named insured has been an issue that courts have grappled with including this court and I'm familiar obviously with the case that's cited by Judge Lemon in her opinion and that Judge Smith authored which is the National Union Fire case and all I can say, Your Honor, about that case and it certainly says that you and your apply only to the named insured but that apparently was not a litigated matter because the quote I got from that case is we take that as a given. In that case it was an exclusion where ironically the additional insured in Apache's shoes was arguing that you and your only meant named insured because they didn't want to be lumped into the exclusion and so that was not a contested issue but later in the CalDive case, 2010, Judge Davis said you were involved in, you and your was not limited to only the named insured and you pointed out that additional insured should get the same benefits as the named insured. The insured actually made it, clarified it, but defined, they defined you and your. It was definitely a different policy, Your Honor. I think what Apache struggles with in this situation is what is it supposed to do to try to get the coverage that it thought it bargained for through linear, I mean it paid the premium, Catlin said it, it was supposed to cover all of the risks including contractual and it didn't. Well you get the risks that the policy covers, I mean you can't expect more than that. I would submit that if linear says it will and Catlin looks at the contracts and charges a premium that we should get the coverage that we bargained for. If they're also obliged to look at the policy. Well, my point, Your Honor, is that between the as per written contract and or whether you or your is limited to named insured or whether that's a vague or ambiguous provision that would require any ambiguity, obviously the policy is resolved in favor of coverage. To me, Your Honor, I think it's at a minimum there's an ambiguity here that whether you and your is clearly meant to cover someone who has paid a premium, who is named as Your Honor pointed out, named as an additional insured, that party should not get coverage as a named insured including contractual liability coverage. Thank you. Thank you very much. Mr. McCloud. May it please the Court, on behalf of Catlin Martin McCloud. Your Honors, I think you hit to the heart of the question. The issue is very straightforward application of insurance law under Louisiana law. You have three contracts that are at issue in this case. You have the insurance contract that my client, Catlin, issued to the named insured linear. You have the contract that linear, the master service contract that linear entered into with Apache. Under the policy's clear terms, that is an insured contract and then you have a separate contract that Apache entered into with international and that is not an insured contract. The way the policy reads is section one, it provides coverage for bodily injury and property damage subject to certain exclusions and the exclusion is 2B2, is it excludes contractual liability but then what it does do is it has an exception to that where there is an insured contract and you go look at the definition of the policy of what an insured contract is and how is that defined. It is defined as your work that you assume and the tort liability of another person and the tort liability is defined as liability that is not imposed by law, excuse me, that is imposed by law. And so if you apply just the plain definitions to the facts of this case, you and your is clearly defined in the policy as the named insured linear. There is a separate insured provision you mentioned insured but that is different from the named insured and assuming Apache is an insured under section two, that is fine but it does not mean that it is a named insured. What Apache is trying to do is trying to say that they are trying to expand the insured contract definition to a contract that they are party to where they assume the contractual liability of another party and not the tort liability. And so with all due respect, our position is that Apache is trying to put a square peg in a round hole. The case was mentioned, the National Union case versus Liberty Mutual that was decided by Judge Smith. I would disagree with my counsel. I would say that the you and your and the named insured was significant to that case because it hinged upon whether or not S&B was a named insured or American Pipe was a named insured. The court, Judge, you found that American Pipe was a named insured and S&B was not and because of that, you rule as the way you did. The case that was mentioned and cited by their brief, the Cal Dive case versus Seabright, that involved the workers' compensation policy, maritime employers' liability policy. You can look at record 16.16.5 in the lower district court in that case, which is attached to those motions. It did not define an insured. It had a section B that talked about an insured in general terms, but it is apples and oranges comparing a CGL policy that we issued in this case to a workers' comp policy. We would submit that the terms you and your are ubiquitous for named insured and insurance across the country and that we're not asking the court to do anything other than what Catlin agreed to do when it issued the policy. Provide all the subject to the terms and conditions, assuming Apache was an additional insured, they get all the benefits of that policy, but they're also subject to the exclusions. And one of that exclusion is the insured contract exclusion. Apache attempts to write that out of the policy. They provide no reason why that exclusion should be written out of the policy. We don't try to limit anything. We say the policy is what it is. On the question of the referral of incorporation of the policy of the contract, the linear contract and the terms in that policy, the Aspen case, we don't have a problem with that case. It obviously involved an eerie guess by this court on whether or not what a policy of the Texas insurance, what policy the Texas Supreme Court would adopt on insurance. And what that court did was it looked back to the Deepwater Horizon case, which we were involved in. And in that case, I know Judge Higginson, you were on that panel opinion. And ultimately, we got a rehearing to the Texas Supreme Court. Ultimately, the Texas Supreme Court reversed that. And it did involve a limitation on coverage. And if you take a step back and you look at the way these marine and energy contracts work, it's very typical for that to happen. Because what happens is you have insurance policies that half the time the assurers don't really see. But they enter into contracts with different parties. And what they're trying to do in these contracts is allocate risk among the parties. And when they write that contract, they say, as per written contract, you're limited to the indemnities assumed. And what they're trying to do is say, yes, we're going to indemnify you against certain things. And you're going to be an additional insurer, but only for those certain things. But certainly, there's never been a case cited by Apache that you can expand coverage by reference to incorporating a contract into a policy. So for example, under Apache's theory of the case, if for some reason the linear Apache contract said that linear had to provide $10 million in coverage, then by their theory of the case, that would somehow expand our insurance policy to require $10 million in coverage. And that's simply not the case. So we think the case law is clear. We don't think the case is that much different in general terms from the straightforward contractual application of your case, the National Union versus Liberty Mutual. And we appreciate the court's consideration. Thank you. Thank you very much. OK. Mr. Tompkins? Yes. Yes, Your Honor. Very briefly, you know, clearly we can't turn a $1 million policy into a $10 million policy. Understand that. But what we're asking for is contractual liability cover, which a CGL policy does cover for insured contracts. So if you and your is either found to be ambiguous, or if by being named as an additional insured, we're considered to be a named, we are considered you or your, then our contract with iOS becomes the insured contract. And it's their tort liability that we cover. I mean, I think that's what the issue boils down to. We're not asking for a contractual, I mean, for a CGL policy to be turned into some different policy. We're just asking for the contractual liability coverage that it does afford to be extended to this particular situation, Your Honor. It's not quite as dramatic as Mr. McCloud would have it be. And I think that's the distinction that we'd ask the court to make in reversing the district court and allowing coverage, or at least, I mean, there's other issues in the case, but that this motion be denied and the case remanded. Thank you so much. Thank you, Mr. Chairman. We have your case.